# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D19-4231

_____

JULIO SANCHEZ,

    Appellant,

    v.

YELLOW
TRANSPORTATION/GALLAGHER
BASSETT,

    Appellees.

_____

On appeal from an order of the Judge of Compensation Claims.
Walter J. Havers, Judge.

Date of Accident: April 21, 2004.

September 21, 2020

PER CURIAM.

In this workers' compensation case, Julio Sanchez ("Claimant") appeals the Judge of Compensation Claims' (JCC's) order denying his claims for medical care for his lumbar spine. In the order, the JCC found that Claimant did not prove entitlement because he did not satisfy his burden of showing that the workplace accident was the major contributing cause of the need for the requested treatment. Because we find merit in Claimant's argument that he met his burden and was not required to provide additional medical evidence of major contributing cause under the circumstances presented here, we reverse.

## I.

Under workers' compensation law, the employer must pay compensation and furnish medical benefits if an employee suffers an accidental compensable injury arising out of and in the course and scope of employment. *See* § 440.09(1), Fla. Stat. (2003). But the accidental compensable injury must be the major contributing cause (MCC) of any resulting injuries. *Id.* As defined in the statute, MCC is "the cause which is more than 50 percent responsible for the injury as compared to all other causes combined for which treatment or benefits are sought." *Id.* Here, the JCC concluded that Claimant had the burden to prove MCC but failed to do so. To the extent this issue involves the resolution of facts, our standard of review is for competent substantial evidence (CSE); to the extent it involves an interpretation of law, our standard of review is de novo. *See, e.g., Benniefield v. City of Lakeland*, 109 So. 3d 1288, 1290 (Fla. 1st DCA 2013).

## II.

Claimant, a truck driver, began working for Yellow Transportation, Inc. ("Employer") in 1991. Over the years, he sustained several workplace injuries involving various body parts, including the shoulders, neck, and low back. As found by the JCC, one of these injuries occurred on April 21, 2004, when Claimant "injured his lumbar spine while driving his truck on a very bumpy road." The Employer and its insurance carrier ("E/C") accepted compensability and authorized medical care with Dr. Cohen, an orthopedic surgeon. At some point, this workplace injury was consolidated with two other accidental injuries under a date of accident of December 8, 2004.

In June 2014, the E/C changed servicing agents, but the former servicing agent evidently did not transfer all the records for the April 21, 2004, lumbar injury to the current servicing agent. Although Claimant deposed two adjusters with the current servicing agent, both adjusters, as found by the JCC, "had tremendous difficulty explaining what happened in this claim" before the 2014 transfer. Despite this lack of information, in January 2016, the E/C entered into a stipulation with Claimant

2

that addressed several issues involving Claimant's various workplace injuries, including the lumbar spine.

In the stipulation, the parties first agreed that Claimant's *cervical* injury remained the MCC of the need for treatment, but that the E/C were not precluded from challenging causation in the future "should evidence of an intervening cause or unrelated condition arise." Pertinent to other injuries, the parties stipulated that the E/C "continues to authorize Drs. Cohen and Wachsman to treat the left shoulder, right shoulder, cervical and *lumbar spines*, subject to the right to challenge causation in the future, as mentioned above." (Emphasis added).

According to Dr. Cohen's medical records, Claimant received treatment for his cervical spine in May 2014. Although Claimant also complained of low back pain, Dr. Cohen did not provide a related diagnosis or make any treatment recommendations for the low back at that time. In February 2018, Claimant again reported low back complaints to Dr. Cohen, but explained further that the pain resulted from the truck driving incident that occurred sometime before December 2004. At that visit, Dr. Cohen diagnosed Claimant with intermittent low back pain syndrome and L5/S1 degenerative disc disease. Upon Claimant's return visit in May 2018, Dr. Cohen expressly noted that he had been following Claimant's low back complaints "for a long time." Dr. Cohen subsequently recommended a lumbar MRI, which was performed in June 2018.

In a follow-up visit that same month, Dr. Cohen reviewed the MRI results and diagnosed Claimant with lumbar degenerative disc disease and spondylosis with stenosis, most prominent at L5-S1 and slightly less severe at L3-4 and L4-5. He recommended a referral to pain management for the lower back complaints. Approximately one year later, he recommended an L5-S1 epidural steroid injection (ESI). Although the E/C paid for the lumbar MRI and for all of Claimant's visits with Dr. Cohen, they did not act on either recommendation.

3

## III.

In December 2018, Claimant filed a petition for benefits (PFB) requesting authorization of the pain management recommended by his authorized treating physician, Dr. Cohen. In May 2019, Claimant filed a second PFB seeking authorization of the ESI, which was also recommended by Dr. Cohen. In support of both PFBs, Claimant attached DWC-25 medical reporting forms completed by Dr. Cohen and listing his recommendations.

In the pretrial stipulation, the E/C conceded Claimant sustained a compensable accident on April 21, 2004, but asserted that the resulting injury was initially a lumbar strain that was "no longer accepted." In addition to disputing that the workplace injury was the MCC of the current need for treatment, the E/C also raised the defense that Claimant "suffered an intervening event" which is the MCC of the need for any continued lumbar spine treatment. In response, Claimant asserted, among other things, that proof of MCC is unnecessary because the E/C cannot show any intervening or competing cause.

At the final hearing, Claimant relied on medical records from Dr. Cohen in support of his claims. Neither party submitted expert medical opinion testimony. For the first time, the E/C raised an additional defense that the recommended ESI was not medically necessary. Claimant responded that the E/C waived this defense by failing to plead medical necessity as an issue in the pretrial stipulation. Although the JCC listed this defense in the final order, he did not expressly rule on the waiver issue, and instead ultimately concluded that it was unnecessary to reach the matter—presumably in light of his denial based on MCC.

In the final order, the JCC rejected Claimant's argument that he did not have to establish MCC because the E/C accepted compensability of a lumbar spine injury and had not provided evidence of any intervening or competing cause. The JCC also found that Dr. Cohen's medical records were "unreliable" evidence of MCC. Concluding that Claimant had therefore failed to satisfy his burden of proving MCC, he denied the medical claims accordingly.

4

Generally, the injured worker bears the burden of proving entitlement to claimed medical benefits with evidence that the compensable industrial injury is the MCC for the requested medical treatment. *See, e.g.*, *Checkers Restaurant v. Weithoff*, 925 So. 2d 348 (Fla. 1st DCA 2006). But, as this Court explained in *Meehan v. Orange County Data & Appraisals*,

> once a claimant has established compensability of an injury, via prior ruling or a stipulation, the E/C cannot challenge the causal connection between the work accident and the injury. *Engler v. Am. Friends of Hebrew Univ.*, 18 So. 3d 613, 614 (Fla. 1st DCA 2009). The E/C may only question the causal connection between the injury and the requested benefit.

272 So. 3d 458, 461 (Fla. 1st DCA 2019); *see also Teco Energy Inc. v. Williams*, 234 So. 3d 816, 820-21 (Fla. 1st DCA 2017) (citing *Engler*, 18 So. 3d at 614). Thus, once a claimant establishes compensability of an injury in this manner, "[t]he E/C bears the burden of proof 'to demonstrate a break in the causation chain, such as the occurrence of a new accident or that the requested treatment was due to a condition unrelated to the injury which the E/C had accepted as compensable.'" *Meehan*, 272 So. 3d at 461 (quoting *Jackson v. Merit Elec.*, 37 So. 3d 381, 383 (Fla. 1st DCA 2010)).

Under this case law, the key to the MCC issue here is the identity of the accepted compensable injury. According to Claimant, the E/C accepted compensability of his low back injury, without qualification and inclusive of the lumbar spine. Significantly, the JCC specifically found that Claimant injured his *lumbar spine* in the compensable April 21, 2004, accident and that the E/C authorized Dr. Cohen to treat the *lumbar spine*. Although the E/C argued that the accepted injury was only a lumbar strain (a "minor" injury), they concede, as the JCC expressly noted, there is no medical evidence of a lumbar strain. In fact, there is no supporting evidence of a specific accepted diagnosis whatsoever. The adjusters here freely admitted that they knew virtually

nothing about the 2004 back injury and lacked the necessary records to find out more.

Furthermore, in 2016—more than ten years after the purported acceptance of a lumbar strain only—the E/C agreed in the joint stipulation to continue to provide medical care for Claimant's *lumbar spine*. If, as the E/C now contend, the accepted injury was just a strain, it is unclear why they did not expressly limit the stipulated treatment to a lumbar strain or why such a "minor" injury still merited authorized medical care. The E/C argue that the stipulation is not ultimately determinative here because a compensable injury is a diagnosis, not simply a body part. And, according to the E/C, they could not have accepted Claimant's degenerative condition of the lumbar spine because this diagnosis did not exist until the June 2018 MRI.

We find the E/C's argument unpersuasive on both the facts and the law. Although a specific diagnosis could establish the parameters of an injury accepted as compensable, the E/C presented no evidence of the acceptance of a specific diagnosis for this admittedly compensable injury. Furthermore, the fact that the 2018 MRI confirmed the presence of degenerative disc disease does not prove that this diagnosis is not a part of the accepted lumbar spine injury referenced in the 2016 joint stipulation. The E/C presented no medical evidence suggesting that the degenerative condition here did not exist in 2016 or could not be the natural progression of the accepted injury.

We also find this Court's opinion in *Meehan* to be particularly instructive here. In that case, the claimant developed breathing problems that he attributed to his work environment. 272 So. 3d at 459. The employer/carrier entered into a broad stipulation accepting compensability of the workplace exposure. *Id.* Years later, they denied all future medical benefits because the compensable accident was no longer the MCC of the need for treatment. *Id.* at 459-60. Specifically, the medical evidence suggested that the claimant's symptoms, which had been treated as asthma, actually indicated a diagnosis of vocal cord dysfunction unrelated to work. *Id.* at 460.

6

In reversing the JCC's subsequent denial of all future medical care, this Court explained:

> The Claimant *does* have compensable injuries, by stipulation. He has a 'building related illness associated with indoor air quality problems.' Notably, the stipulation does not specify 'pulmonary' conditions. However, the JCC failed to recognize the legal significance of the [employer/carrier's] broad stipulation. *See Jackson*, 37 So. 3d at 383.

272 So. 3d at 462. The Court went on to conclude that, given this broad stipulation, the claimant there was not required to prove MCC. *Id.* Instead, the employer/carrier had the burden of proving a break in causation. *Id.*

In the *Jackson* case,[1] cited as authority in the *Meehan* opinion, the parties signed a pretrial stipulation agreeing that the claimant there sustained a "back" injury. *Jackson*, 37 So. 3d at 382. By virtue of this stipulation, this Court found that the claimant met his initial burden of proof. *Id.* at 383. Furthermore, the employer/carrier had not demonstrated the necessary break in the causation chain, "such as the occurrence of a new accident or that the requested treatment was due to a condition unrelated to the injury which the [employer/carrier] had accepted as compensable." *Id.* Although the medical opinion evidence indicated that there never was a relationship between the claimant's back symptoms and his original injury, the Court reversed the JCC's denial of benefits. *Id.* at 384. In doing so, the Court noted that

> [t]his dispute might never have arisen if the parties and the JCC took care to define the compensable injury. An

---

[1] Although the *Jackson* case involved a causation standard predating the adoption of MCC, this Court previously found that its holding translates to the current MCC standard if a break in causation is shown with evidence that the compensable injury is no longer 50% or more of the cause of the need for the requested benefits. *Perez v. Se. Freight Lines, Inc.*, 159 So. 3d 412, 414 (Fla. 1st DCA 2015).

agreement that the back injury was compensable does little in limiting the [employer/carrier's] area of responsibility, nor does it give Claimant guidelines as to what treatment he should be requesting from the [employer/carrier].

*Id.* at 383.

The E/C here entered into a similarly broad stipulation[2] that did not define the accepted compensable injury any more narrowly than the lumbar spine. As a result, the burden shifted to the E/C to demonstrate a break in causation. The E/C assert that the 2018 diagnosis constitutes that break in causation, but again, offer no evidence that this diagnosed condition did not exist at the time of the 2016 stipulation or represents a condition unrelated to the accepted injury. Recall as well that the E/C's specific defense here was that Claimant "suffered an intervening *event,* which is the [MCC]." (Emphasis added). The JCC did not find evidence of any intervening event, and we conclude that the record will not support a finding of a break in causation on this or any other basis.

V.

Claimant also argues that the JCC erred in failing to "make a legal finding" on the medical necessity defense. The E/C assert that this issue—which appears to be based on Claimant's waiver argument—has not been preserved because Claimant did not mention the medical necessity defense in his motion for rehearing below. *See, e.g., Hamilton v. R.L. Best Int'l*, 996 So. 2d 233, 234 (Fla. 1st DCA 2008) (holding if error is one that first appears in a final order, the aggrieved party must bring it to the judge's attention by filing a motion for rehearing). Thus, according to the E/C, in the event of reversal on the MCC issue, this case should be remanded to the JCC for consideration of their defense that the ESI is not medically necessary. But by the same token, however,

---

[2] We agree with the JCC's interpretation that the stipulation language did not provide the E/C with any additional right to challenge causation beyond that provided by law.

8

the E/C did not seek a rehearing below, or file a cross-appeal on their own defense which is purportedly ripe for determination.

We find it unnecessary to address the preservation question because the evidence of medical necessity here is unrefuted. Dr. Cohen listed his ESI recommendation on that portion of the DWC-25 reporting form for identifying medically necessary treatment. The E/C offered no contrary medical opinion. In fact, during the final hearing, the E/C presented no argument whatsoever in support of this last minute defense. Given the record evidence, there is no need for the JCC to make findings of medical necessity on remand.

## VI.

In sum, the JCC here erred when he ruled that Claimant bore the burden of proving MCC and denied benefits because Claimant did not satisfy that burden. For the reasons discussed above, we reverse the order below and remand for entry of an order granting the requested medical benefits.

REVERSED and REMANDED.

RAY, C.J., and LEWIS and JAY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Amie E. DeGuzman of the Law Office of John J. Rahaim II, Jacksonville, for Appellant.

William H. Rogner and Scott B. Miller of HR Law, P.A., Winter Park, for Appellees.